# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MICHELLE WHEELER,          )    CASE NO. 1:15-cv-01540
                                )
          Plaintiff,         )
                                )    **MAGISTRATE JUDGE**
         v.                )    **VECCHIARELLI**
                                )
CAROLYN W. COLVIN,         )
    Acting Commissioner of Social    )
    Security,                      )    **MEMORANDUM OPINION AND**
                                )    **ORDER**
         Defendant.

Plaintiff, Michelle Wheeler ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act").  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

On April 29, 2014, Plaintiff filed her application for SSI, alleging a disability onset date of October 2, 2005.  (Transcript ("Tr.") 11.)  The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On March 16, 2015, an ALJ held Plaintiff's hearing.[1]  (*Id.*)  Plaintiff

---

[1]  Plaintiff amended her alleged onset date to April 29, 2014.  (Tr. 11, citing Exh. B17B.) Plaintiff had also initially sought a Period of Disability and Disability Insurance Benefits, but, by amending the alleged onset date, she knowingly withdrew those claims as the

participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  A prior administrative decision was made on January 7, 2013.  (Tr. 12, *citing* Exh. B1A.)  The ALJ adopted the previous decision's findings as there was no new and material evidence.  (*Id.*)   On April 3, 2015, the ALJ found Plaintiff was not disabled.  (Tr. 26.)  On June 19, 2015, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On August 4, 2015, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 13, 14 & 17.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred when she adopted the findings of a prior decision and failed to fully and appropriately evaluate the evidence; (2) the ALJ erred in her evaluation of the opinions of Plaintiff's treating sources; (3) the ALJ erred by failing to properly evaluate her credibility; and, (4) the ALJ failed to include all of Plaintiff's functional limitations in the residual functional capacity determination and improperly applied *res judicata*.  (Doc. No. 13 at p. 1.)

## II.   EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in September of 1963 and was 51-years-old on the amended alleged disability onset date.  (Tr. 25.)  She had a limited education and was able to communicate in English.  (*Id.*)  She had past relevant work as a wax molder.  (Tr. 25.)

―――――――――――――――

date last insured preceded that date.  (*Id.*)

2

**B.    Medical Evidence**

    **1.    Medical Reports**[2]

        **a. Emergency Treatment and Hospital Stays in 2014**

On January 18, 2014,Plaintiff was admitted to South Pointe Hospital where she was diagnosed with anxiety/depression/bipolar disorder.  (Tr. 910-916.)

On March 8, 2014, Plaintiff was taken to the Emergency Room (ER) by emergency medical responders after taking high doses of her prescribed medications. (Tr. 951.)  She stated that she took those medications secondary to "wanting to sleep forever."  (*Id.*)  Toxicology reports showed she was positive for marijuana.  (Tr. 955.) She was diagnosed with a suicide attempt and depression.  (*Id.*)

Plaintiff was transferred to North Coast Behavioral Hospital as a suicide risk and admitted from March 9, 2014 until March 18, 2014.  (Tr. 919, 956.)  Upon discharge, medical records show a diagnosis of mood disorder NOS, substance induced mood disorder, marijuana abuse, and ascribed a Global Assessment of Functioning ("GAF") score of 85.[3]  (Tr. 920.)

---

[2]  The recitation of the evidence is not intended to be exhaustive and includes only evidence related to Plaintiff's mental limitations that post-date the previous decision.

[3]  The GAF scale reports a clinician's assessment of an individual's overall level of functioning.  *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV").  An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments.  A GAF score between 81-90 indicates minimal symptoms, good functioning in all areas, interest and involvement in a wide range of activities, socially effective, generally satisfied with life, and no more than everyday problems or concerns. DSM-IV at 34.  A recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

On April 8, 2014, Plaintiff again presented to the ER with an "overdose" after taking extra doses of her prescription medications.  (Tr. 957.)  Her pastor was at her bedside and stated that she had multiple applications for Social Security disability benefits denied.  (Tr. 961.)

Plaintiff was admitted to Marymount Hospital on April 9, 2014 and discharged the next day.  (Tr. 414-426.)  She denied a genuine suicide attempt but alleged intermittent suicidal ideation.  (Tr. 419.)  Her most recent "attempt" was triggered by chronic conflict with her daughter and her six year struggle to obtain disability.  (*Id.*)  According to hospital notes, "Prospect of work is intolerable to her, as she insists that if she applied for disability again 'I'll definitely get it this time.'"  (*Id.*)  Upon discharge she was diagnosed with major depressive disorder, recurrent, severe, with psychotic features; anxiety disorder; post-traumatic stress disorder, chronic; and cannabis dependence.  (Tr. 423.)  She was assigned a GAF score of 55.[4]  (Tr. 424.)

### b.  Treating Psychiatrist Dr. Amin

Plaintiff began treatment with psychiatrist, Jaina Amin, M.D., back on March 28, 2013.[5]  (Tr. 554-560.)  On June 12, 2014, Plaintiff told Dr. Amin that her mood had been better; she had been feeling low since her disability denial and planned to reapply.  (Tr. 596.)  Dr. Amin noted no significant change since Plaintiff's last visit.  (*Ia.*)

On July 31, 2014, Plaintiff reported to Dr. Amin that she feels overwhelmed, has

---

[4]  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty.  DSM-IV at 34.

[5]  Plaintiff's brief does not point to any treatment by Dr. Amin in 2014, though the Commissioner does identify several instances of treatment.

low motivation, and avoids socializing.  (Tr. 593.)  Dr. Amin again noted no significant

change since Plaintiff's last visit.  (*Id.*)  Dr. Amin completed two assessments, one on

July 31, 2014 and another on January 8, 2015.  (Tr. 599-602, 978-980.)  These

assessments are discussed in detail below.

On October 9, 2014, Plaintiff was seen by Dr. Amin and accompanied by her

pastor.  (Tr. 621.)  She was fearful to reveal a trauma from childhood.  (*Id.*)  Plaintiff's

pastor told Dr. Amin that she had been talking more about death and suicidal ideation

since her most recent (seventh) denial of her attempt to obtain disability.  (*Id.*)

On December 18, 2014, Plaintiff told Dr. Amin that she is tired during the day, but

busy.  (Tr. 617.)  She stated that she had been crocheting and tries to get out of the

house more in a car that her pastor purchased for her.  (*Id.*)

### c.  Social Worker Opinion

On August 12, 2014, Delores Crosby, MSW, QMHS, completed a form

cocnerning Plaintiff's functioning.  (Tr. 604-605.)  Ms. Crosby diagnosed depressive

disorder and generalized anxiety.  (Tr. 605.)  Ms. Crosby indicated that in an 8-hour

workday, Plaintiff could understand and remember *very* short and simple instructions

40% of the time and could carry out short and simple instructions between 30 and 40%

of the time; sustain a normal routine and schedule without supervision 40% of the time;

complete a normal routine and schedule without interruption from psychologically based

symptoms 20% of the time; perform at a consistent pace without an unreasonable

number of rest periods 10% of the time; accept instructions and respond appropriately

to criticism from supervisors 10% of the time; and maintain attention and concentration

for extended periods between 20% and 30% of the time.  (Tr. 604.)

5

### 2.     Agency Reports

On June 5, 2014, prior to the aforementioned treatment and functionality assessments of Dr. Amin, State Agency psychologist Carl Tischler, Ph. D., indicated that his mental residual functionality assessment (MRFC) "is an adoption of ALJ MRFC dated 1/7/13.  ALJ MRFC is being adopted under AR 98-4."  (Tr. 170.)  Dr. Tischler did review Plaintiff's records from February 2014 onwards.  (Tr. 164-66.)  Dr. Tischler noted that Plaintiff's suicidal ideation was an "escape fantasy" without an active plan.  (Tr. 165.)  Dr. Tischler stated that "[a]lthough MER shows new IP, the nature and course of this new IP is very similar to the episode clt had back in 2010 considered by ALJ.  Clt's overall functioning based on OP record is unchanged from ALJ, not supportive of new and material changes."  (Tr. 166.)

On August 26, 2014, State Agency psychologist Courtney Zeune, Psy. D., reviewed the record, which included Dr. Amin's July 31, 2014 assessment and Ms. Crosby's August 12, 2014 assessment.  (Tr. 210-11.)  No changes were made on reconsideration and the mental RFC from the previous ALJ's decision was again adopted.  (Tr. 214.)

## C.     Relevant Hearing Testimony

### 1.     Plaintiff's Hearing Testimony

At the March 3, 2015 hearing, Plaintiff testified as follows:

- She lives alone in an apartment.  Her household income consists of food stamps and Section 8 housing.  (Tr. 37-38.)  For a time, she was also receiving $100 per month from her pastor.  (Tr. 38.)

- She has a driver's license and an automobile, which her pastor and his wife purchased for her.  (Tr. 39.)  She drives to the grocery store and to

6

appointments, but does not "do anything like social."  She has a phobia about taking the bus because there are too many people on the bus.  (*Id.*)

- She emigrated from Trinidad when she was 17 years old.  She finished the 11th grade, but dropped out in 12th grade due to a poor home life.  (Tr. 39-40.)  She attempted to obtain a GED on 8 occasions, the last in 2008. (Tr. 40.)

- She learned to crochet and sew in Trinidad.  (Tr. 40-41.)  She crochets every now and then, but has carpal tunnel and has to stop for hours.  (Tr. 46.)  She never did start a crocheting business and ended up donating some afghans to local hospitals.  (Tr. 47.)  She denied selling any afghans, and indicated she crocheted seven blankets total in the past year.  (*Id.*)

- She worked for a temporary service in 2000, which resulted in a myriad of short-lived jobs.  (Tr. 41-45.)  She worked part-time at Office Max for two months.  (Tr. 44.)

- She cannot work due to poor concentration and an inability to focus.  (Tr. 45.)  She stays in bed most of the day and it has become more and more difficult for her to be around others.  (*Id.*)  She has some back pain and asthma.  (Tr. 46.)

- As far as medications, she takes Seroquel, Clonazepam, Losartan, and a generic form of Ambien.  (Tr. 47-48.)

- She sees four different people at Connections – a counselor, a psychiatrist, a case manager, and a benefit specialist.  She sees her counselor once a week.  (Tr. 49.)

- On a typical day, she wakes up between 2 and 4 a.m.  Some days she tries to crochet.  When she does crochet, she does so until her hands start hurting and then stops to watch television.  She watches movies on Netflix through the internet.   (Tr. 50.)  She does not use Facebook as much as in the past, where she had enjoyed playing games.  (Tr. 51.)

- She does her own grocery shopping and cleans, but states her kitchen and bedroom are messy.  (Tr. 52.)  She does not receive many visitors and her children do not come to see her, as she has to text or call them. (Tr. 52-53.)

- She attends church, but not every Sunday.  (Tr. 53.)  She and her pastor had a falling out and one of their arguments lead to suicidal thoughts.  (Tr. 58-61.)

- She tried to commit suicide three times in the past year.  (Tr. 53-54.)

- She smokes marijuana but will go months at a time without smoking.  (Tr. 56-57.)

### 2.  Vocational Expert's Hearing Testimony

The ALJ noted that while there are a number of jobs listed in Plaintiff's employment file, only one constituted substantial gainful activity – her factory work position scraping plastics.  (Tr. 69.)  The VE characterized that position as a wax molder, Dictionary of Occupational Titles ("DOT") 549.685-038.  (*Id.*)  The ALJ posed the following hypothetical question to the VE:

> So assume a hypothetical individual of the Claimant's age, hang on, and education and with that past job that you have described.  And further assume that the hypothetical individual has only non-exertional limitations. This person can occasionally climb ramps and stairs; can never climb ladders, ropes and scaffolds; can work in a position that has no concentrated exposure to extreme heat or extreme cold; can perform only simple/routine/repetitive tasks in an environment without strict production quotas; can have only occasional and superficial interaction with the public or co-workers and only occasional decision-making.

(Tr. 69-70.)

The VE testified that such an individual could perform Plaintiff's past relevant work as a molder.  (Tr. 70.)  Furthermore, the VE identified the following additional jobs that such an individual could perform: inspector and hand packager, DOT 559.687-074 (1,600 jobs locally, over 6,000 in Ohio, over 100,000 nationally); assembler, plastic hospital products, DOT 712.687-010 (1,400 locally, over 5,000 in Ohio, over 100,000 nationally); inspector, electrical equipment, DOT 727.687-062 (1,500 locally, over 6,000 in Ohio, over 100,000 nationally).  (Tr. 70-71.)  The VE indicated that his testimony was consistent with the DOT.  (Tr. 71.)

8

Plaintiff's counsel asked the VE to maintain the same hypothetical, but asked what impact there would be if the hypothetical person missed 2 to 7 days once every three months.  (Tr. 71-72.)  The ALJ responded that such an individual would have a difficult time maintaining employment.  (Tr. 72.)  Plaintiff's counsel added an alternative limitation to the hypothetical: "frequently inappropriately respond [to supervisors]."  (Tr. 72-73, 76.)  The VE testified, based on his experience, that such a person could not maintain employment.  (Tr. 73, 76.)  The VE also testified that a person who missed four or more times per month would be unemployable.  (Tr. 75.)

### III.     STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981)*.  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520© *and* 416.920©.  A "severe impairment" is one that

9

"significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560©, *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since April 29, 2014, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

2.  The claimant has the following severe impairments: asthma, affective disorder, and anxiety disorder (20 C.F.R. § 404.1520© and § 416.920©). (20 CFR 404.1520© and 416.920©).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to perform work that only occasionally requires climbing of stairs or ramps and does not

10

require climbing of ladders, ropes, or scaffolds. The work cannot require concentrated exposure to extreme heat or extreme cold. The work should involve only simple, routine, repetitive tasks in an environment with no more than occasional and superficial interaction with the public or coworkers. The work should be low stress, defined as requiring no more than occasional decision-making and no strict production quotas.

5.  The claimant is capable of performing past relevant work as a Wax Molder, DOT 549.685-038, generally performed at the light exertional level with an SVP2 of 2 (unskilled). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

6.  The claimant has not been under a disability, as defined in the Social Security Act, from April 29, 2014, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(1) and 416.920(f)).

(Tr. 14-26.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

11

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

### 1.  The Application of Drummond and AR 98-3(6)

In her first assignment of error, Plaintiff argues that the ALJ violated the holding of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 2004) [6] when she adopted the findings and conclusions of the first ALJ who reviewed Plaintiff's claim for benefits (the "first ALJ"), because the evidence presented to the ALJ in the instant case shows a change, or deterioration, in Plaintiff's condition since the first ALJ's decision.  For the following reasons, Plaintiff's argument is without merit.

Plaintiff's argument is essentially that her condition worsened since the first ALJ's decision, and therefore the ALJ was precluded by *Drummond* from adopting the first ALJ's findings and RFC.  However, that is not the holding of *Drummond*.  Rather, in *Drummond*, the Sixth Circuit held that, because *res judicata* applied to proceedings under the Act, "[a]bsent evidence of an improvement in a claimant's condition, a

---

[6]  Acquiescence Ruling ("AR") 98-3(6), 1998 SSR LEXIS 4 (June 1, 1998).

subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842.  The Sixth Circuit did not hold that the subsequent ALJ must adopt findings different from those of the prior ALJ.  Rather, the standard for reviewing a subsequent ALJ's decision remains substantial evidence.  Id. at 843 (applying the substantial evidence standard to the ALJ's conclusion that the claimant's condition had improved).

Here, Plaintiff maintains that her condition worsened since the prior  ALJ's decision, rendering the current ALJ's reliance on res judicata improper.  Plaintiff points to her four hospitalizations for suicidal ideation in 2014 as evidence of a decrease in her functional abilities.  (Doc. No. 13 at pp. 14-15.)  Plaintiff's argument is without merit.  Although the ALJ found that there was no new and material evidence that supported a departure from the RFC or other findings in the prior decision, the ALJ, contrary to Plaintiff's assertion, did not fail to evaluate this evidence.  (Tr. 12, 16-24.)

The final decision in Plaintiff's prior application was made on January 7, 2013.  (Tr. 12.)  In the portion of her decision setting forth the RFC in this case, the ALJ did not merely adopt the prior RFC.  Instead, the decision contains a lengthy, detailed discussion of the evidence that post-dates the prior determination, starting with treatment notes from February of 2013 and including the 2014 hospitalizations referenced in Plaintiff's brief.  (Tr. 16, 18-22.)  The ALJ specifically relied on the opinions of Dr. Tischler and Dr. Zeune, both of whom reviewed the same evidence of hospitalizations that the ALJ recounted and concluded that there was not a new and material change in Plaintiff's impairments since the January 2013 decision.  As such, the ALJ's decision to adopt the previous decision's findings was supported by substantial evidence of record.

13

Nonetheless, the record does contain two assessments from Dr. Amin that, if given controlling weight, could alter the RFC.  Therefore, those opinions could be considered new and *material* evidence, but only if adopted.  The ALJ, however, did not ascribe significant weight to those opinions.  Whether the ALJ complied with the procedural safeguards of the treating physician rule, however, is a separate issue that is addressed below.

### 2.  Treating Physician Rule

Plaintiff contends that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Amin.  (Doc. No. 13 at 17-19.)  The Commissioner does not challenge the assertion that Dr. Amin is a treating physician.  (Doc. No. 14 at 15.)

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, she must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted).  Where an

14

ALJ fails to explain her reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id.*

"The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), citing *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985).  Furthermore, it is well-established that administrative law judges may not make medical judgments.  *See Meece v. Barnhart,* 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (quoting *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990)).  Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); see also

Specifically, Plaintiff asserts that ALJ did not give good reasons for rejecting medical assessments completed by Dr. Amin on July 31, 2014 and January 8, 2015.  (Doc. No. 13 at pp. 17-18.)

On July 31, 2014, Dr. Amin completed an Assessment of Ability to Sustain Work-Related Activities (Mental).  (Tr. 599-602.)  Dr. Amin stated that Plaintiff's diagnoses included generalized anxiety disorder, depression, and borderline personality.  (Tr. 602.)  Dr. Amin indicated that in an 8-hour workday, Plaintiff could understand and remember *very* short and simple instructions 80% of the time and could carry out short and simple instructions only 40% of the time; sustain an ordinary routine without supervision 60% of

the time; work in coordination or in proximity to others without being unduly distracted 20% of the time; complete a normal workday and workweek without interruptions from psychologically based symptoms 20% of the time; perform at a consistent pace without an unreasonable number and length of rest periods 20% of the time; and maintain attention and concentration for extended periods (approximately 2-hour segments) 10% of the time.  (Tr. 599-600.)  Dr. Amin further opined that in an 8-hour workday, Plaintiff could appropriately interact with the general public 20% of the time; accept instructions and respond appropriately to criticism from supervisors 0% of the time; get along with co-workers 10% of the time; and maintain socially appropriate behavior 10% of the time. (Tr. 600.)  Dr. Amin explained that these limitations were supported by "Mood affected [with] Positive/Neg Interractions [sic], will affect ability to consistently work + Interaction with Peers."  (Tr. 600.)  Dr. Amin also indicated that in an 8-hour workday, Plaintiff could respond appropriately to changes in the work setting 10% of the time, and had zero ability to deal with work stress due to Plaintiff's mood and anxiety which cause her not to leave her bed for long periods of time.  (Tr. 600-601.)  Dr. Amin indicated that Plaintiff would miss more than four days of work per month and that Plaintiff's limitations have lasted or could be expected to last 12 months or longer.  (Tr. 601.)

On January, 15, 2015, Dr. Amin completed an identical form with some significantly different limitations.[7]  (Tr. 978-980.)  Dr. Amin reiterated Plaintiff's diagnosis

---

[7]  The second page of the form, however, is either missing from the transcript or was never completed.  Plaintiff criticizes the ALJ for not correcting this deficiency.  (Doc. No 13 at p. 19.)  Plaintiff, who was represented by same counsel, Ms. Goodwin, at the hearing, fails to point to any part of the record where the absence of the one page from Dr. Amin's second assessment was brought to the ALJ's attention.  To the contrary, at the beginning of the hearing, Ms. Goodwin indicated that she had a chance to look at

16

of major depression, and further diagnosed bipolar disorder, anxiety, and personality

disorder while ruling out borderline personality and intermittent explosive disorder.  (Tr.

980.)  In an 8-hour workday, Plaintiff would continue to be able to understand and

remember *very* short and simple instructions 80% of the time, but her ability to carry out

short and simple instructions improved to 80% (from 40%).  (Tr. 599, 978.)  Her ability to

sustain an ordinary routine without supervision also improved to 80% (from 60%), while

her ability to work in coordination or in proximity to others without being unduly

distracted slightly improved to 40% (from 20%).  (*Id.*)  At the same time, Plaintiff's ability

to complete a normal workday and workweek without interruptions from psychologically

based symptoms worsened to 10% (from 20%) of the time.  (*Id.*)  Dr. Amin also

indicated that Plaintiff's ability to deal with ordinary work stress improved minimally from

0 to less than 10% of the time.  (Tr. 601, 979.)  Dr. Amin stated that Plaintiff's limitations

were the product of Plaintiff's limited tolerance for stress and an inability to self regulate

or self soothe.  (Tr. 979.)  Dr. Amin continued to indicate that Plaintiff would miss more

than four days of work per month and that Plaintiff's limitations have lasted or could be

expected to last 12 months or longer.  (Tr. 979.)

Ultimately, the ALJ limited Plaintiff to low stress work (defined as requiring no

more than occasional decision-making and no strict production quotas); simple, routine,

repetitive tasks; and an environment with no more than occasional and superficial

interaction with the public or coworkers.  (Tr. 15.)  After recounting the limitations

assessed in Dr. Amin's July 31, 2014 and January 8, 2015 opinions, the ALJ addressed

the file, had no objection to the documents that had been submitted, and that no other
documents were forthcoming.  (Tr. 35.)

those opinions as follows:

> The undersigned notes that the record indicates that the claimant enjoys crocheting and each winter donates her work to a homeless shelter.  This would suggest a greater capacity for concentration, persistence, pace, and attention than opined by Dr. Amim.  In addition, the record contains consistent therapy records from her treating licensed social worker indicating that although she has occasional relationship issues with her Pastor, she is active in her church including interactions with the congregation.  This would suggest a greater capacity to interact with others than opined by Dr. Amim.  As a result of these inconsistencies with the medical evidence of record, the undersigned can accord some but not full weight to this opinion as the undersigned is persuaded that the record supports restrictions to simple, repetitive tasks with only superficial interactions with the public and coworkers as well as only occasional decision making although the undersigned is not persuaded that the record otherwise supports restrictions as extreme as opined by Dr. Amim.
>
> * * *
>
> To the extent that this opinion evidence is inconsistent with the previous medical source statement of Dr. Amim, little weight can be accorded.  However, some weight is accorded as this version of Dr. Amim's medical source statement is not wholly inconsistent with the findings of the prior Administrative law judge or the undersigned.

(Tr. 23.)

Plaintiff maintains that the  ALJ essentially gave one reason for rejecting the various functional limitations assessed by Dr. Amin in the July 2014 assessment related to Plaintiff's ability to concentrate, maintain persistence and pace, and to understand, carry out, and remember work instructions – Plaintiff's crocheting.  With respect to the limitations relating to Plaintiff's ability to socially interact with the general public, co-workers, and supervisors, Plaintiff maintains the ALJ again gave essentially one reason for rejecting these limitations – Plaintiff's relationship with her pastor and interaction with the church congregation.  (Tr. 22.)

The Court acknowledges that this a close case, and Plaintiff's argument is not

18

entirely unpersuasive.  Standing alone, the above reasons are insufficient to reject the opinions of a treating source.  The ALJ's assumption that a person who can crochet cannot be as psychologically limited in her ability to concentrate or carry out instructions is speculation.  Dr. Amin was well aware of Plaintiff's crocheting when she rendered her opinions.  (Tr. 593, 617.)  The ALJ failed to explain how a minimal and infrequent activity, performed for a few hours a day, was so inherently inconsistent with the mental limitations found by Plaintiff's psychiatrist.  *See, e.g., Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity.  Such activity is intermittent and not continuous, and is done in spite of the pain suffered by [claimant].");  *accord Pirrone v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 39128 (N.D. Ohio Mar. 4, 2013) ("Plaintiff's claim for disability is largely based on her inability to maintain concentration, persistence and pace, as well as problems with stress and fatigue....  the mere fact that she can complete routine tasks does not speak to how long it takes her to complete them.") (McHargh, M.J.)

Similarly, it is unclear how Plaintiff's attendance at church (which is less than weekly according to her testimony) or her tempestuous relationship with her pastor undermines Dr. Amin's opinion concerning Plaintiff's abilities to interact with co-workers, supervisors, or the general public.  (Tr. 53.)  The last sentence of the ALJ's explanation also suggests that "the record" does not support the "extreme" restrictions assessed by Dr. Amin.  (Tr. 23.)  While the opinions of the State Agency physicians may constitute substantial evidence supporting the ALJ's ultimate RFC finding, they may not, standing

19

alone, furnish the basis for the  rejection of a treating source.[8]

However, the ALJ also identifies material inconsistencies between two opinions

of Dr. Amin, which were rendered just over five months apart, and concludes that "little

weight can be accorded."  (Tr. 23.)  A comparison of the two opinions reveals that no

explanation is offered for these significant discrepancies or why Plaintiff appears to

have improved in some areas while simultaneously deteriorated in others.  (Tr. 599-602,

978-98.)  Inconsistency between multiple opinions by the same treating source has

been accepted by the Sixth Circuit as a valid basis for rejecting a treating source's

opinion.  *See, e.g., Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 116 (6th Cir.

2010) ("Payne ignores the apparent inconsistency between Dr. Tan's 2003 and 2005

opinions, makes no attempt to explain it, and offered no evidence of changes in her

condition that might have justified Dr. Tan's later opinion."); *Poe v. Comm'r of Soc. Sec.,*

*342 Fed. App'x 149, 156 (6th Cir. 2009)* ("Poe presented no other objective medical

evidence to explain how or why, in Dr. Boyd's opinion, Poe was not a candidate for

disability in July 2003, but degenerated to the point of being unable to perform

sedentary work by August 2006.")  Based on the material and unexplained

inconsistencies between the two opinions rendered in relatively close proximity, it was

---

[8]  *See, e.g., Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("Surely
the conflicting substantial evidence must consist of more than the medical opinions of
the nontreating and nonexamining doctors. Otherwise the treating-physician rule would
have no practical force because the treating source's opinion would have controlling
weight only when the other sources agreed with that opinion.  Such a rule would turn on
its head the regulation's presumption of giving greater weight to treating sources
because the weight of such sources would hinge on their consistency with nontreating,
nonexamining sources."); *Brewer v. Astrue*, 2011 U.S. Dist. LEXIS 64262 (N.D. Ohio
June 17, 2011) ("the ALJ cannot base his rejection of [a treating source's] opinion upon
its inconsistency with the opinions of non-examining State Agency consultants. To do so
would turn the treating physician rule on its head.")

not unreasonable for the ALJ to reject both of the opinions as unreliable.

Although the ALJ's analysis on this issue is brief and a more thorough explanation would have been beneficial, the opinion of the ALJ is sufficient.[9] Accordingly, Plaintiff's argument that the ALJ violated the treating physician rule as to Dr. Amin is without merit.

### 3. Credibility

In her third assignment of error, Plaintiff contends that the ALJ failed to perform a proper credibility analysis, specifically that she did not comply with the requirements of Social Security Ruling (SSR) 96-7p, 1996 SSR LEXIS 4. (Doc. No. 13 at pp. 19-22.)

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983). The ALJ also must provide an adequate explanation for his credibility determination. "It is not sufficient to make a conclusory statement 'that an individual's

---

[9] "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)); *see also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)).

allegations have been considered' or that 'the allegations are (or are not) credible.'"

S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.).  Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight."  *Id.*

When determining a claimant's credibility, the ALJ should look to medical evidence, statements by the claimant, other information provided by medical sources, as well as any other relevant evidence in the record.  *See* SSR 96-7p, 1996 SSR LEXIS 4.  Beyond medical evidence, an ALJ should consider seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p, 1996 SSR LEXIS 4, Introduction; *see also* *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724 (N.D. Ohio 2005) (Baughman, M.J.).

Plaintiff concedes that the ALJ offered numerous factual reasons why she determined the Plaintiff to be only partially credible.  (Doc. No. 13 at p. 21.)  These reasons included Plaintiff's non-compliance with recommended treatment modalities

included discharge for excessive absences from scheduled appointments, repeated non-compliance with medication, and inconsistent statements made by Plaintiff to her treating sources.  (Doc. No. 13 at p. 21, citing Tr. 21.)  Plaintiff's brief suggests that the ALJ failed to consider the relevant factors and instead went directly to the reasons why Plaintiff was not entirely credible.  (*Id.*)  Plaintiff contends that the reasons offered by the ALJ for finding her not entirely credible are "misleading and inadequate."  (Doc. No. 13 at p. 21.)  While Plaintiff may disagree with the inferences the ALJ drew from the evidence of record, that does not provide a basis for remand given the considerable deference accorded credibility determinations.  The reasons given by the ALJ for finding Plaintiff less than fully credible incorporate several of the seven factors, as they discuss medication, treatment other than medication, and Plaintiff's non-compliance with these treatment modalities.  An ALJ need not analyze all seven factors, but should show that she considered the relevant evidence.  *See Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005); *Allen v. Astrue*, 2012 U.S. Dist. LEXIS 47590 (N.D. Ohio Apr. 4, 2012).  Finally, Plaintiff takes issue with the ALJ's recitation of her non-compliance with treatment.  (Doc. No. 13 at pp. 21-22.)  More specifically, Plaintiff avers that all but one of the instances of non-compliance occurred prior to amended onset date.  (*Id.*)  Plaintiff cites no authority for the proposition that events prior to the alleged onset date can have no bearing on a claimant's credibility.

Plaintiff's third assignment of error is, therefore, without merit.

### 4.  Moderate Difficulties With Concentration, Persistence, or Pace

At Step Three**,** in determining whether Plaintiff met or equaled a listing, the ALJ

determined that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties."[10]  (Tr. 14, 17.)  In the RFC, the ALJ included limitations that restricted Plaintiff to "only simple, routine, repetitive tasks" and "low stress" work which required only occasional decision-making and no strict production quotas.  (Tr. 15.)  Plaintiff argues that the ALJ erred because the RFC does not adequately incorporate the "moderate difficulties" with concentration, persistence, and pace found earlier at Step Three.  (Doc. No. 13 at pp. 23-24.)

Plaintiff's fourth assignment of error is not altogether clear.  She relies on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010).  She also argues that the mental requirements of every job include the ability to maintain concentration and attention for 2-hour segments citing the Social Security Administration's Program Operations Manual System "POMS" § DI 25020.10.  (Doc. No 13 at pp. 23-24.)

With respect to the *Ealy* line of argument, prior decisions from within this district have declined to find that *Ealy* established a *per se* rule concerning the level of functional limitations that must be ascribed where a claimant is determined to have moderate limitations in his or her ability to maintain "concentration, persistence, or pace."  *See, e.g., Jackson v. Comm'r of Soc. Sec.*, 1:10CV763, 2011 WL 4943966 (N.D. Ohio Oct.18, 2011)[11] (Boyko, J.); *accord Kline v. Astrue*, No. 1:12-CV-01802, 2013 WL

---

[10]  The relevant pages of the ALJ's decision are out of order in the record.  The Step Three analysis begins on page 14 of the transcript (page 4 of 16 of the decision) and then continues on page 17 of the transcript (page 5 of 16 of the decision).

[11]

*Ealy* does not require further limitations in addition to limiting a claimant to "simple, repetitive tasks" for every individual found to have moderate difficulties in concentration, persistence, or pace.  *See Ealy*, 594 F.3d 504.  Instead, *Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations

24

1947164 at *5 (N.D. Ohio Apr. 17, 2013) (White, M.J.), *report and recommendation adopted sub nom. Kline v. Colvin*, No. 1:12 CV 1802, 2013 WL 1946201 (N.D. Ohio May 9, 2013)*; Todd v. Astrue*, 1:11–CV–1099, 2012 WL 2576435 (N.D. Ohio May 15, 2012) report and recommendation adopted, 1:11 CV 1099, 2012 WL 2576282 (N.D. Ohio July 3, 2012); *Clayton v. Astrue*, 1:12–CV–79, 2013 WL 427407 (S.D. Ohio Feb.1, 2013); *Horsely v. Astrue*, 1:11–CV–703, 2013 WL 55637 (S.D. Ohio Jan.3, 2013); *cf. Raymond v. Comm'r of Soc. Sec.*, 1:11 CV 156, 2012 WL 2872152 (N.D. Ohio June 4, 2012) (acknowledging that "[t]he law in this District on the proper application of *Ealy* remains in the development stage") (Baughman, M.J.) report and recommendation adopted, 1:11CV15, 2012 WL 2872462 (N.D. Ohio July 12, 2012).

To the extent Plaintiff is arguing that she cannot maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure), her argument appears to be based on Dr. Amin's assessment that Plaintiff has such an ability only 10% of the time.  (Tr. 600.) However, as discussed above, the ALJ adequately set forth the reasons for rejecting Dr. Amin's opinions.  Thus, Plaintiff's argument essentially rehashes an argument already addressed and rejected in the second assignment of error.  An ALJ, however, need not include limitations in the RFC that were found to be unsupported by the evidence or not

---

required additional speed-and-pace-based restrictions. *See Id.*  In *Ealy*, the claimant presented evidence from the record that showed the claimant's limited ability to maintain attention over time, even when performing simple, repetitive tasks.  *See Id.* Here, unlike *Ealy*, Plaintiff refers to no record evidence to suggest that she had any greater limitations than those identified by the ALJ. (Doc. No. 26 at 22-23.)

*Jackson*, 2011 U.S. Dist. LEXIS 120476 at *11.

credible.

Therefore, Plaintiff's final assignment of error is without merit.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 21, 2016